BORKOSKY, Appellant,

v.

MIHAILOFF; Krischan, Appellees.

[Cite as *Borkosky v. Mihailoff* (1999), 132 Ohio App.3d 508.]

Court of Appeals of Ohio,
Third District, Wyandot County.

No. 16–98–07.

Decided March 3, 1999.

*Stansbery, Schoenberger & Scheck* and *Laurie A. Scheck,* for appellant.

*Mason & Ellis* and *Mark J. Ellis,* for appellees.

WALTERS, Judge.

Plaintiff–appellant, Christina Borkosky, appeals a judgment of the Court of Common Pleas of Wyandot County, Juvenile Division, granting specified visitation rights to her child's paternal grandmother, appellee, Sandra Krischan. Appellant argues that the trial court did not have jurisdiction to award visitation to the paternal grandmother. For the following reasons, we agree with appellant's argument and reverse and vacate the judgment of the trial court.

Appellant is the mother of Hunter James Mihailoff, a child born out of wedlock on September 11, 1996. Administrative paternity proceedings were initiated with the Wyandot County Child Support Enforcement Agency ("CSEA") approximately one year after the child's birth. As part of these administrative proceedings, on September 3, 1997, the child's father, appellee, Nick Mihailoff, Jr., acknowledged paternity and the parties entered into an agreement on all related issues.

Thereafter, on September 5, 1997, appellant filed a complaint for the establishment of a parent/child relationship wherein appellant requested the court to enter an order of paternity, approve the parties' agreement, and incorporate it into the decree. Mihailoff answered the complaint, waived service and hearing, and consented to the judgment. On October 14, 1997, the trial court issued a consent judgment entry finding Mihailoff to be the child's father and incorporating the parties' agreement into the order. Article Five of the parties' agreement provided that the paternal grandmother, Sandra Krischan, "shall remain the daycare provider for Hunter while mother is at work."

On February 19, 1998, appellant notified the CSEA of her intent to relocate, and the agency filed a notice pursuant to R.C. 3109.051(G)(1) with the trial court; appellant thereafter moved from her residence in Upper Sandusky to Gibsonburg, Sandusky County, Ohio. The record also indicates that in January 1998, Mihailoff relocated his residence to Lucas County, Ohio, from his residence in Wyandot County.

Shortly after relocating to Gibsonburg, and without seeking a modification of the original decree, appellant ceased using Sandra Krischan as Hunter's day care provider. Thereafter, Mihailoff filed a motion for contempt citation on March 11, 1998. Concurrent with that filing, the paternal grandmother filed a motion to

intervene as a third-party defendant, the basis for which was to preserve her "significant relationship" with the child. In conjunction with the motion to intervene, Krischan also filed a motion for specific visitation rights. The trial court granted the motion to intervene and set the matters of visitation and contempt for hearing.

Prior to the hearing, on March 31, 1998, Mihailoff filed a motion to modify his child support obligation due to a change in employment status. The matter was consolidated with the others for the purpose of hearing.

The hearing took place on May 6, 1998. At the hearing, appellant moved to dismiss the grandmother's motion for visitation on the grounds that the court did not have jurisdiction to grant the relief requested. At the close of the evidence, the trial court overruled Mihailoff's motion to modify child support. The court also found appellant in contempt, but deferred disposition for an unspecified time. The court took the issue of grandparent visitation under advisement. Thereafter, on July 2, 1998, the court issued a journal entry overruling appellant's motion to dismiss, finding that grandparent visitation would be in Hunter's best interests and ordering Krischan to have visitation with the child every fifth weekend and one week during the summer.

It is from this judgment that appellant has filed the instant appeal. The matter is now before this court for consideration of appellant's three assignments of error.

Assignment of Error I

"The Wyandot County Court of Common Pleas, Juvenile Division, did not have jurisdiction to order specified visitation to Intervenor/Appellee."

The Ohio Revised Code sets forth various statutes that permit grandparents to petition a court for specified visitation rights. The two statutes germane to this appeal are R.C. 3109.051, "companionship or visitation rights," and R.C. 3109.12, "companionship or visitation rights where mother is unmarried."

At the May 6, 1998 hearing, counsel for appellant argued that the trial court lacked jurisdiction to grant grandparent visitation rights under either of these statutes. The court disagreed and ultimately granted Krischan's motion for visitation pursuant to R.C. 3109.051. We disagree with the decision of the trial court and conclude that the court lacked jurisdiction to enter an order for grandparent visitation rights.

The jurisdiction of a court is that power conferred upon it by law, by which the court is authorized to hear, determine and render final judgment in an action, and to enforce its judgment by legal process. *State ex rel. Ellis v. Bd. of Deputy State Supervisors of Cuyahoga Cty.* (1904), 70 Ohio St. 341, 349, 71 N.E. 717, 718.

█ R.C. 3111.13 sets forth the jurisdiction that a juvenile court maintains in rendering a final judgment in a parentage action, including the power to enter an order of paternity and an order of child support. In addition, a juvenile court also has jurisdiction to determine issues of custody and visitation arising from a parentage action. With respect to grandparent visitation, R.C. 3111.13(C) provides:

"After entry of the judgment or order [determining the existence of the parent/child relationship], * * * if the mother is unmarried, * * * the parents of the father * * * may file a complaint *pursuant to section 3109.12 of the Revised Code* requesting the granting under that section of reasonable companionship or visitation rights with respect to the child." (Emphasis added.)

R.C. 3109.12 specifies that if a mother is unmarried and paternity has been established, as the facts in this case clearly indicate, the paternal grandparents may file a complaint for the establishment of visitation rights in the "court of common pleas of the county in which the child resides * * *."

█ Here, it is apparent that the court did not attempt to grant the grandmother's request under R.C. 3109.12 because Hunter resided with his mother in Sandusky County at the time that Krischan filed her motion in Wyandot County. Therefore, even though R.C. 3109.12 confers jurisdiction upon the juvenile court to entertain requests for grandparent visitation rights, the Wyandot County Juvenile Court lacked jurisdiction to grant the grandmother's motion in this case because of the child's residence in Sandusky County.

It is clear that R.C. 3109.12 was intended to address the same or similar issues regarding visitation that have arisen in this case. Nonetheless, our discussion must now turn to the trial court's reliance on R.C. 3109.051, and we must determine whether this section also authorizes the juvenile court to entertain requests for grandparent visitation where the mother is unmarried and paternity has been established.

R.C. 3109.051(B)(1) states:

"*In a divorce, dissolution of marriage, legal separation, annulment, or child support proceeding* that involves a child, the court may grant reasonable companionship or visitation rights to any grandparent * * *." (Emphasis added.)

█ This case certainly did not involve a divorce, dissolution of marriage, legal separation, or annulment. Arguably, by virtue of Mihailoff's March 31, 1998 motion to modify child support, there was pending before the court a child support proceeding. For the following reason, we reject that argument.

Consistent with the reasoning expressed in *Fellmeth v. Cravens* (Apr. 15, 1998), Summit App. No. 18602, unreported, 1998 WL 178559, we find that the juvenile

division had no authority to modify Mihailoff's child support obligation. The child support obligation herein was established by virtue of a CSEA administrative order and, thus, was governed by R.C. 3111.22(C)(5)(d).[1] At the time that the order was established, R.C. 3111.22(C)(5)(d) stated that the mother or the father had thirty days to object to a support order by bringing an action in the juvenile court for the determination of support. The statute went on to provide that if neither party objected within the thirty days, the administrative order would become final and could only be modified through further administrative proceedings.

In this case, Mihailoff did not object to the CSEA order. Consequently, the order became final and not subject to initial review by the juvenile court. Therefore, even though a "child support proceeding" may have been pending before the court, the court was without authority to entertain Mihailoff's motion.

■ Assuming, *arguendo,* that a child support proceeding was properly before the court, we remain doubtful that the court was vested with the authority to determine the issue of grandparent visitation under R.C. 3109.051. First, we find it significant that R.C. 3111.13(C), which pertains to final judgments in parentage actions, specifically cites R.C. 3109.12 without making reference to R.C. 3109.051.

Next, we find the legislative history of R.C. 3109.051 and R.C. 3109.12 to be telling. Both statutes were enacted as part of Am.Sub.H.B. 15 and were put into effect on May 31, 1990. Although legislative commentary is scant, the final bill analysis reveals that the legislators considered the statutes to be separate and distinct. The analysis demonstrates that R.C. 3109.051 pertains to domestic relations cases, while R.C. 3109.12 specifically deals with children of unmarried mothers.

Finally, in *In re Martin* (1994), 68 Ohio St.3d 250, 253, 626 N.E.2d 82, 84, the Supreme Court of Ohio suggested in dicta that the General Assembly intended for the statutes to be applied according to the marital status of the mother.

Based upon the foregoing, we find that the trial court erred in granting the grandmother's request for visitation rights under R.C. 3109.051. Appellant's first assignment of error is sustained.

### Assignment of Error II

"The court's decision to grant Intervenor/Appellee grandparent visitation was an abuse of discretion because it was not in the best interest of the child and it was against the manifest weight of the evidence."

---

1. We note that R.C. 3111.22 has been amended since the administrative order of support was entered.

## Assignment of Error III

"The trial court abused its discretion in granting Intervenor/Appellee visitation as a means to punish appellant for contempt of the parties' agreement."

Based upon our determination of appellant's first assignment of error, appellant's second and third assignments of error have been rendered moot.

Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse and vacate the judgment of the trial court.

*Judgment reversed*
*and vacated.*

THOMAS F. BRYANT, P.J., and HADLEY, J., concur.