OPINION
{¶ 1} Appellant Debra Campbell appeals the judgment of the Mahoning County Court of Common Pleas, Probate Division, dismissing her application for guardianship over the person and estate of her adult son, Jay Campbell. Jack Campbell, who is Jay's father, filed a competing application, which was also dismissed. Jay Campbell was seventeen years old at the time the applications for guardianship were filed, but he turned eighteen prior to the date that the probate court entered its judgment. Jay Campbell is acknowledged by the parties to be autistic. The probate court found that Appellant and Appellee were divorced and had entered into a shared parenting agreement involving Jay. The divorce decree was issued by the Mahoning County Court of Common Pleas, Domestic Relations Division. The probate court determined that the domestic relations court continued to exercise jurisdiction over the care of Jay Campbell, even after he reached his eighteenth birthday, due to his disability and due to the prior shared parenting agreement. For these reasons, the probate court dismissed the guardianship applications on jurisdictional grounds. We conclude that the probate court was correct in deferring to the prior jurisdiction of the domestic relations court, and therefore, the judgment is affirmed.
 Procedural History {¶ 2} Jack Campbell filed an "Application for Appointment of Guardian of an Alleged Incompetent" on September 29, 2004. The application stated that Jay Campbell was seventeen years old, and that Jay was incompetent due to mental retardation. The application stated that Jay was autistic, functioned in the multiple-handicapped range, and needed assistance with daily living tasks. A hearing was scheduled for December 13, 2004.
 {¶ 3} On November 15, 2004, Appellant filed a similar application to be appointed as guardian.
 {¶ 4} On November 30, 2004, an "Investigator's Report on Guardianship" was filed with the court. The report stated that Jay had a poor understanding of the concept of guardianship, and that he did not appear to understand what the investigator was saying. The report stated that Jay was mentally impaired, was diagnosed with autism, and had challenging behavioral and cognitive problems. The report stated that Jay's parents were divorced and had entered into a shared custody order. The report stated that Jay turned eighteen on October 6, 2004.
 {¶ 5} The court held a hearing on December 13, 2004. The trial court issued its judgment that same day dismissing both applications for guardianship due to lack of jurisdiction. The judgment entry indicates that a hearing was held, although there is no transcript of that hearing in the record on appeal. This timely appeal followed on January 12, 2005. Appellant has filed a brief, and Jack Campbell has also filed a brief under the heading "Brief of Other Interested Party Not Necessarily Appellant or Appellee." Jack Campbell's brief is not in support of his own application for guardianship, but rather, argues in favor of affirming the trial court judgment dismissing Appellant's application. It does not appear that the father is an Appellee in this case because he did not at any point oppose Appellant's guardianship application in the trial court proceedings. Neither has Mr. Campbell appealed the dismissal of his own application for guardianship. Furthermore, Mr. Campbell did not file a motion for leave to submit an amicus curiae brief as provided for in App.R. 17. We have no basis to accept Mr. Campbell's brief in this appeal. Thus, we will proceed to review the merits of only Appellant's brief in this matter.
 Sole Assignment of Error {¶ 6} "The Trial Court erred when it dismissed that [sic] Appellant-Mother's application for guardianship for lack of jurisdiction."
 {¶ 7} This case involves a dismissal of a guardianship application for lack of jurisdiction based on the fact that jurisdiction over the subject matter of the case was already established in another court. A trial court's ruling dealing with subject matter jurisdiction is reviewed de novo on appeal. Burnsv. Daily (1996), 114 Ohio App.3d 693, 701, 683 N.E.2d 1164. Inasmuch as the trial court may have needed to make factual determinations to rule on its subject matter jurisdiction, a reviewing court will defer to those findings if they are supported by competent and credible evidence. State ex rel.Fleming v. Rocky River Bd. of Edn. (1997), 79 Ohio St.3d 200,205, 680 N.E.2d 981.
 {¶ 8} Before examining Appellant's argument, it is necessary to take a closer look at what the probate judge actually accomplished in its December 13, 2004, judgment entry. The judgment entry first makes a few findings, most notably that the Mahoning County Court of Common Pleas, Domestic Relations Division, issued orders in 1996 and 1997 concerning the parties' divorce and concerning a shared parenting agreement. The shared parenting agreement involved Jay Campbell, a minor at the time, and included provisions for child support. The probate judge also found that Jay Campbell is a disabled minor and remains under a legal disability due to his autism.
 {¶ 9} The probate court then held that a domestic relations court that issues a decree of divorce retains continuing jurisdiction over the custody, care and support of a minor child involved in that divorce, citing Loetz v. Loetz (1980),63 Ohio St.2d 1, 406 N.E.2d 1093. The court noted that, pursuant to R.C. § 3109.01, a child generally reaches the age of majority at age eighteen, and is able to enter into binding contracts at that time. R.C. § 3910.01 states: "All persons of the age of eighteen years or more, who are under no legal disability, are capable of contracting and are of full age for all purposes."
 {¶ 10} The court explained, though, that parents of a disabled child continue to be subject to the child custody and support orders of a divorce decree even after the child's eighteenth birthday, due to the ongoing legal disability of the child. The probate court cited Loetz, as well as this Court's opinion in Abbas v. Abbas (1998), 128 Ohio App.3d 513,715 N.E.2d 613, in support. The probate court concluded, based on these authorities, that the domestic relations court was vested with continuing exclusive jurisdiction over Jay Campbell due to the prior shared parenting agreement and Jay's continuing disability. The probate court judgment entry directed the parties to file an appropriate action with the domestic relations court. Finally, the judgment entry directed the clerk to send a copy of the judgment to the domestic relations court. These are the salient points of the judgment entry that is now being appealed.
 {¶ 11} Appellant argues that the probate court, rather than the domestic relations court, has exclusive jurisdiction over guardianships, based on the jurisdiction granted in R.C. §2101.24(A)(1)(e):
 {¶ 12} "(A)(1) Except as otherwise provided by law, the probate court has exclusive jurisdiction:
 {¶ 13} "* * *
 {¶ 14} "(e) To appoint and remove guardians, conservators, and testamentary trustees, direct and control their conduct, and settle their accounts;"
 {¶ 15} Appellant contends that the probate court cannot simply ignore its jurisdiction over this matter, and that Jay is essentially left without any way to obtain a guardian because the only court with jurisdiction over guardianships has refused to assert that jurisdiction.
 {¶ 16} Although R.C. § 2101.24(A)(1)(e) is certainly relevant to this appeal, we must point out that there are other legal considerations that might prevent the probate court from exercising its jurisdiction, considerations that are not specifically mentioned in R.C. § 2101.24(A)(1)(e). As R.C. §2101.24(A)(1) itself states, the probate court has exclusive jurisdiction over guardianships, "[e]xcept as otherwise provided by law."
 {¶ 17} For example, the caselaw governing jurisdictional priority or conflict of jurisdiction would also prevent the probate court from considering the guardianship applications at issue here. The jurisdictional priority rule states: "`[A]s between [state] courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties.'" State ex rel. Racing Guild of Ohio v.Morgan (1985), 17 Ohio St.3d 54, 56, 17 OBR 45, 476 N.E.2d 1060, quoting State ex rel. Phillips v. Polcar (1977),50 Ohio St.2d 279, 4 O.O.3d 445, 364 N.E.2d 33, syllabus. "Once a court acquires jurisdiction over a cause, its authority continues until the matter is completely and finally disposed of, and no court of coordinate jurisdiction is at liberty to interfere with its proceedings." Duckworth v. Burger King Corp.,159 Ohio App.3d 540, 2005-Ohio-294, 824 N.E.2d 592, ¶ 13, citing John Weenink Sons Co. v. Cuyahoga Cty. Court of Common Pleas (1948),150 Ohio St. 349, 38 O.O. 189, 82 N.E.2d 730, paragraph three of the syllabus.
 {¶ 18} We also must take into account the Loetz case, cited by the trial court, in which the Ohio Supreme Court held:
 {¶ 19} "`Where a court of common pleas, on rendering a decree of divorce, further decrees the "custody, care and control" of the minor children of the marriage to one of the parties, a probate court, while such decree remains in force, can not, as between the parties to the decree, legally interfere with the custody so decreed, either by habeas corpus or letters of guardianship.'" Id. at 2-3, (quoting Hoffman v. Hoffman
(1864), 15 Ohio St. 427.)
 {¶ 20} The trial court also relied on our ruling in Abbas,
supra, in which this Court held that the domestic relations court had continuing jurisdiction to order child support for a 25-year old disabled son who was a subject of the divorce decree. Abbas
relied on the holding of Castle v. Castle (1984),15 Ohio St.3d 279, 473 N.E.2d 803, which stated:
 {¶ 21} "In the case of mentally or physically disabled children there must exist a duty both morally and legally on parents to support and maintain such children. The common-law duty imposed on parents to support their minor children may be found by a court of domestic relations having jurisdiction of the matter to continue beyond the age of majority if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority." Id. at 283.
 {¶ 22} Castle also held:
 {¶ 23} "1. The common-law duty imposed on parents to support their minor children may be found by a court of domestic relations having jurisdiction of the matter, to continue beyond the age of majority if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority.
 {¶ 24} "2. The domestic relations court retains jurisdiction over parties in a divorce, dissolution or separation proceeding to continue or to modify support payments for a mentally or physically disabled child, who was so disabled before he or she attained the statutory age of majority, as if the child were still an infant." Id. at paragraphs one and two of the syllabus.
 {¶ 25} Appellant does not dispute the holdings in Castle
and Abbas, but argues that the probate court has concurrent jurisdiction to rule on a guardianship application even while the domestic relations court rules on child support issues. Appellant argues that these are separate matters and do not present a conflict of jurisdiction. Appellant cites In re Guardianship ofConstable (June 12, 2000), 12th Dist. No. CA990-5-039, in support of her argument. In re Constable involved circumstances somewhat similar to the instant appeal, but also contains a significant difference.
 {¶ 26} In re Constable involved the guardianship of Shawn Constable, a mentally disabled adult, and the son of James and Linda Constable. James and Linda were divorced while Shawn was a minor, and Linda was named as residential parent. Shawn was then placed in a residential care facility.
 {¶ 27} At some point at or near the time that Shawn reached his eighteenth birthday his parents filed guardianship applications in the probate court. Up to this point, In reConstable and the instant case are similar. The next significant event for the Constables, however, occurred when the father filed a petition in the domestic relations court:
 {¶ 28} "While the guardianship proceedings were pending before the probate magistrate, James filed a motion in the Court of Common Pleas, Domestic Relations Division, requesting that court to exercise jurisdiction over the matter. The domestic relations court concluded that the probate court had exclusive jurisdiction over the guardianship of an adult. The probate magistrate and, later, the probate court rendered decisions regarding the guardianship of Shawn only after the domestic relations court declined jurisdiction." Id. at *1.
 {¶ 29} After the domestic relations court was given the opportunity to preside over the matter but, instead, declined jurisdiction, the probate court eventually appointed a guardian and issued various orders concerning that guardianship. The father disregarded those orders, and was held in contempt of court. He also filed a motion to remove the guardian, which was overruled. Mr. Constable appealed those judgments, and argued on appeal that the domestic relations court had exclusive jurisdiction over the care of his son, due to the prior divorce decree. It is in this context that the Twelfth District Court of Appeals held:
 {¶ 30} "Where a matter falls within the exclusive jurisdiction of the probate court, no other court may exercise jurisdiction over the matter. Caudill v. Caudill (1986),29 Ohio App.3d 51, 52, 502 N.E.2d 703. Although the domestic relations court has jurisdiction over child custody and support matters, R.C. 3105.011 and 3109.05, Shawn's guardianship is within the exclusive jurisdiction of the probate court. R.C.2101.24(A)(1)(e) and (g). Once Shawn reached the age of eighteen and Linda and James sought guardianship, the probate court was the only court with jurisdiction over Shawn." Id. at *2.
 {¶ 31} When viewed in the factual and procedural context of the case, the holding in In re Constable does not support Appellant's argument. The case is instructive, though, because the domestic relations court was able to rule on its own jurisdiction prior to any final decision by the probate court. The domestic relations court decided to reject jurisdiction over the ward, thus allowing the probate court to continue with its proceedings. Once that step occurred, and the domestic relations court had no jurisdiction over the case, it certainly did not have any authority to interfere with the guardianship proceedings.
 {¶ 32} In the instant case, the domestic relations court has not had an opportunity to determine whether to exercise continuing jurisdiction or to reject such jurisdiction. We agree with the probate court judgment that the domestic relations court must be given this opportunity. We note that the probate court has not given any indication that it would dismiss the guardianship application if the domestic relations court declines to exercise jurisdiction. The probate judge has simply allowed the domestic relations court to determine its own jurisdiction, somewhat paralleling the events that occurred in In reConstable.
 {¶ 33} We must follow the very clear holding in Loetz that prohibits the probate court from interfering with domestic court's continuing jurisdiction over the care, custody and control of a minor child. Since a legally disabled child who reaches his or her eighteenth birthday is not considered to have reached the age of majority, this Court has recognized that a domestic relations court retains continuing jurisdiction over child custody orders involving such children. Abbas, supra,128 Ohio App.3d at 517, 715 N.E.2d 613.
 {¶ 34} Appellant presents a second argument challenging the trial court's judgment on factual, rather than legal, grounds. Appellant argues that there is no evidence to support the findings made by the probate judge. In particular, Appellant argues that the terms of the shared parenting agreement are not in the record. Appellant concludes that the shared parenting agreement cannot be used as the basis for dismissing the guardianship application when it is not even part of the record. We cannot agree with this argument. First, there is no dispute that Jay Campbell is the subject of a shared parenting agreement issued by the Mahoning County Court of Common Pleas, Domestic Relations Division. Regardless of the terms, the only possible subject matter of a parenting agreement is parenting; which is to say, an agreement involving the care, custody and control of a child. Although the probate court may not have known the exact details of the shared parenting agreement, it is clear that an agreement exists and that the domestic relations court has jurisdiction over it. The very existence of the shared parenting agreement would appear to trigger the holding in Loetz, thus requiring the probate court to defer to the jurisdiction of the domestic relations court.
 {¶ 35} Secondly, the judgment entry under review indicates that the probate court held a hearing on Appellant's guardianship application. Appellant concedes that a hearing took place and that a court reporter was present. Yet, there is no transcript of that hearing in the record. Appellant seems to imply that the probate judge did not allow evidence to be submitted and did not permit a record to be created, but this is not reflected in the record. Even if this were true, there are procedural rules that permitted Appellant to create a substitute record to enable this Court to actually review what occurred at the hearing. See App.R. 9(C) or (D). Since it is clear that a hearing took place, and because no transcript of the hearing is part of the record, an appellate court must generally presume the regularity of the probate court proceedings and affirm the judgment if possible.Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199,400 N.E.2d 384; App.R. 9(B).
 {¶ 36} Finally, Appellant argues that there are no facts to support a finding that Jay Campbell has autism or is under any legal disability. Once again, it is Appellant's duty to provide a record, here, and Appellant did not provide any record of the probate court hearing. Without a record, this Court cannot rule on the sufficiency or insufficiency of the court's findings. At any rate, the outcome of this appeal would be the same whether or not the probate court conducted a full hearing concerning Jay Campbell's autism. If the probate court had found that Jay Campbell was not autistic or was not under a legal disability, then Appellant's application for guardianship would have been dismissed on the merits, and any error by the trial court concerning the jurisdictional question would have been harmless error. If Jay Campbell continues to be under a legal disability, then it is clear that the probate court was correct in deferring to the prior jurisdiction of the domestic relations court, as discussed earlier.
 {¶ 37} Based on the analysis above, it appears that the probate court correctly dismissed Appellant's application for guardianship based on the prior jurisdiction exercised by the domestic relations court over the care, custody and control of Jay Campbell. For this reason, Appellant's assignment of error is overruled, and the judgment of the Mahoning County Court of Common Pleas, Probate Division, is affirmed.
Vukovich, J., concurs.
DeGenaro, J., concurs.