DECISION AND JUDGMENT ENTRY
{¶ 1} After they divorced, a Hawaii court awarded Tobie Marie Thebeau and Richard Joseph Thebeau shared custody of their two children. However, when Ms. Thebeau moved to Ohio, the Hawaii court awarded legal and physical custody of the children to Mr. Thebeau. After Mr. Thebeau moved from Hawaii to Illinois, Ms. Thebeau filed this action seeking to register the Hawaii custody order in Ohio. She also sought the modification of the custody order to give her more visitation or, in the alternative, to give her legal and physical custody of the children. Mr. Thebeau filed a motion to dismiss on the grounds that the trial court lacked subject matter jurisdiction over the dispute. The trial court initially agreed, but, on Ms. Thebeau's motion to reconsider, it concluded it has jurisdiction over the matter. After the trial court adopted the Magistrate's findings that there had been a change in circumstances and that *Page 2 
modification of the Hawaii decree was in the best interests of the child, it awarded legal and physical custody of the children to Ms. Thebeau.
 {¶ 2} Mr. Thebeau argues the trial court could not reconsider its initial order finding that it lacked jurisdiction. Although trial courts lack jurisdiction to reconsider final orders, a final judgment must contain a statement of the relief granted. Because the trial court did not order the complaint dismissed, its judgment entry finding a lack of subject matter jurisdiction was not a final appealable order. Until the trial court entered a final appealable order dismissing the complaint or ordering some other form of relief, the court could reconsider its decision that it lacked jurisdiction.
 {¶ 3} Next, Mr. Thebeau argues that the trial court erred in finding it had jurisdiction to modify the Hawaii decree. The Revised Code gives Ohio courts jurisdiction to modify an out-of-state child custody decree if the court would have had jurisdiction to make an initial custody determination and if the court determines that the child and the child's parents do not presently reside in the other state. Here, it is undisputed that Mr. Thebeau and the children do not live in Hawaii. In order for an Ohio court to make an initial custody determination, the court must find that no other state is the "home state" of the children by virtue of the children residing there for six consecutive months. The court must also find that the children have a significant connection to Ohio other than mere physical presence and that there is substantial evidence in Ohio regarding the children's care, protection, training, and personal relationships. Because Ms. Thebeau has resided and worked in Ohio for over a year, Mr. Thebeau and Ms. Thebeau both were born and raised in Ohio, and the children have a large number of family members in this state on both sides of the family, the *Page 3 
record supports the conclusion that the children have a significant connection to Ohio. And there is substantial evidence of the children's care, protection, training, and personal relationships in Ohio, as the children's mother and a large number of relatives live in Ohio. Furthermore, Ms. Thebeau's fiancé and friends are in Ohio, and they can testify regarding the children's care. Therefore, we hold that the trial court had jurisdiction over this dispute.
 {¶ 4} Next, Mr. Thebeau argues that the trial court abused its discretion in modifying the Hawaii decree to make Ms. Thebeau the residential parent of the children. The trial court may modify a child custody decree if it finds that there has been a significant change in circumstances that has an adverse effect on the well-being of the children, that modification of the order is necessary to serve the best interests of the children, and that the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. Because substantial, competent evidence does not support the trial court's findings that there has been a significant change in circumstances or that modification is necessary to serve the best interests of the children, we hold that the trial court abused its discretion in modifying the custody decree.
 {¶ 5} Accordingly, we reverse the judgment below and remand the case to the trial court for further proceedings consistent with this opinion.
 I. Facts {¶ 6} Following their marriage in Florida, Tobie Marie Thebeau and Richard Joseph Thebeau moved to Germany, Mr. Thebeau's duty station with the Air Force. While in Germany, Mr. and Ms. Thebeau had two children, eleven-year-old Sarah and *Page 4 
seven-year-old Riley. The Air Force transferred Mr. Thebeau to Hawaii, where the family lived for the next six years until the Thebeaus divorced in March 2003. The Hawaii court awarded Mr. and Ms. Thebeau shared custody of the two children. However, in September 2005, Ms. Thebeau decided to move to Lawrence County, Ohio, where she had spent summers as a child and had relatives. Upon the stipulation of the parties, the Hawaii court awarded Mr. Thebeau legal and physical custody of the two children. This order established a visitation schedule that reflected the difficulty of visitation between Hawaii and Ohio; it provided for the children to visit Ms. Thebeau only during school breaks that lasted over 14 days, except that the children would remain with Mr. Thebeau each third Christmas. Mr. Thebeau subsequently remarried. His current wife is also in the Air Force, and he has two stepchildren. Ms. Thebeau married and divorced a second time, and she now lives with her fiancé.
 {¶ 7} In 2006, Mr. Thebeau learned that the Air Force would not extend his service in Hawaii, and he and his wife asked to be stationed in Illinois. They chose Illinois, in part, to allow the children to be closer to Ms. Thebeau. However, when Ms. Thebeau learned that Mr. Thebeau had moved with the children to Illinois in October 2006, she filed this action in Lawrence County seeking to modify the visitation order and seeking legal and physical custody of the children.
 {¶ 8} Mr. Thebeau argued that the trial court lacked jurisdiction over the children, who were residing in Illinois and who had lived in Ohio only during scheduled visitation in December 2005 and over seven weeks in the summer of 2006. Although both Mr. and Mrs. Thebeau were born in Ohio and both continue to have family in Ohio, neither had resided in Ohio during the marriage. The Magistrate concluded that Ohio *Page 5 
had jurisdiction over the matter, but the trial court sustained Mr. Thebeau's objection to the Magistrate's decision and found that the court lacked jurisdiction. However, although the decision was captioned "Judgment Entry," the court did not dismiss the case. On Ms. Thebeau's "motion for reconsideration," the trial court reversed itself and found that it had jurisdiction over the controversy. Specifically, the trial court noted that both parents were born in Ohio, that both parents maintained substantial family relations in Ohio, and that substantial evidence regarding the children's care, protection, training, and personal relationship was available in Ohio. Mr. Thebeau appealed that decision to this Court; however, we dismissed the appeal on the grounds that the trial court's decision that it had jurisdiction over the matter was not a final appealable order.
 {¶ 9} After a hearing on the merits of Ms. Thebeau's complaint, the Magistrate concluded that the Hawaii parenting order was no longer appropriate because the children resided in Illinois rather than Hawaii and more frequent visitation would be less burdensome. The Magistrate explained that, while the children appeared eager to live with and loved both parents, the children "seem[ed] somewhat fearful" of their stepmother. The Magistrate also concluded that Ms. Thebeau would be more likely than Mr. Thebeau to cooperate and facilitate more frequent visitation with the other parent. Although Mr. Thebeau had not violated the Hawaii visitation order, he had refused Ms. Thebeau extra visitation and had "displayed serious lack of concern for the mother-child relationship. * * * [T]he record is replete with incidents in which the father has made it difficult if not impossible for the mother to see or communicate with her children." Therefore, the Magistrate found that a change of custody was in the best interests of the children. *Page 6 
 {¶ 10} Mr. Thebeau filed objections to the Magistrate's decision. After a hearing, the trial court overruled Mr. Thebeau's objections, upheld the Magistrate's Decision, designated Ms. Thebeau as the residential parent, and established a visitation schedule. Mr. Thebeau now brings this appeal.
 II. Assignments of Error {¶ 11} Mr. Thebeau presents four assignments of error for review:
 1. "The Trial Court erred in entertaining a Motion for Reconsideration of a Final Order."
 2. "The Trial Court erred in finding that the court had jurisdiction to modify a foreign custody order under R.C. 3127.17 and 3127.15."
 3. "The Trial Court's decision to change custody was contrary to the weight of the evidence and not supported by the law [ORC 3109.04(E)(1)(a) and 3109.04(F(1)(i)]."
 4. "The Trial Court improperly admitted hearsay evidence in violation of Evidence Rule 803(2)."
 III. The Motion for Reconsideration {¶ 12} In his first assignment of error, Mr. Thebeau argues the trial court erred in reconsidering the order finding that Ohio did not have jurisdiction over this child custody dispute. Although the trial court construed Ms. Thebeau's motion as one for relief from judgment, we agree with Mr. Thebeau that her motion was, in substance, a motion for reconsideration. In her motion, Ms. Thebeau did not argue that any of the grounds for relief from judgment found in Civ. R. 60(B) applied. Instead, she argued the trial court had misapplied the law to the facts of the case in finding that Ohio lacked jurisdiction over the matter, and she consistently requested that the trial court "reconsider" its decision. See Stein v. Wyandotte Wine Cellars, Inc. (1993),88 Ohio App.3d 477, 478, *Page 7 624 N.E.2d 308 (explaining that a motion for reconsideration "simply indicates that the trial judge had misunderstood the situation and had reached the wrong result").
 {¶ 13} Relying on Pitts v. Dep't of Transp. (1981), 67 Ohio St.2d 378,423 N.E.2d 1105, Mr. Thebeau argues the trial lacked jurisdiction to reconsider the order finding that it lacked jurisdiction over this child-custody dispute. In Pitts, the Supreme Court of Ohio held that a motion for reconsideration and all judgments and orders following such a motion are legal nullities. Id. at 381. In particular, the court explained that "[t]he Ohio Rules of Civil Procedure do not prescribe motions for reconsideration after a final judgment in the trial court." Id. at paragraph one of the syllabus. However, in a footnote, the court explained that "[i]nterlocutory orders are subject to motions for reconsideration, whereas judgments and final orders are not. This court is specifically denying motions for reconsideration in the trial court only after final judgments." Id. at 379 n. 1; see Mahlerwein v.Mahlerwein, 160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, at ¶ 20 ("Interlocutory orders are subject to change and may be reconsidered upon the court's own motion or that of a party.").
 {¶ 14} The issue of whether an order is final or interlocutory presents us with a question of law. Mr. Thebeau cites R.C. 2505.02(B)(1) and American Office Servs. v. Sircal Contracting, Inc., Cuyahoga App. No. 82977, 2003-Ohio-6042, at ¶ 8, for the proposition that a dismissal for lack of subject matter jurisdiction is a final appealable order. However, the trial court did not dismiss the action in its initial entry. Instead, it issued a decision stating that it lacked jurisdiction over the controversy. As we have previously explained in Burns v.Morgan, 165 Ohio App.3d 694, 2006-Ohio-1213, 847 N.E.2d 1288, *Page 8 
 [t]he primary function of a final order or judgment is the termination of a case or controversy that the parties have submitted to the trial court for resolution. One fundamental principle in the interpretation of judgments is that, to terminate the matter, the order must contain a statement of the relief that is being afforded the parties. Moreover, a `judgment' must be distinguished from a `decision.' * * * A decision announces what the judgment will be. The judgment entry unequivocally orders the relief. (Citations omitted.)
Although the trial court captioned its decision as a "Judgment Entry," that fact is not in itself determinative; instead, we must look to the language employed in the entry to ascertain whether it accomplishes the termination of a case or controversy submitted to the trial court for resolution. St. Vincent Charity Hosp. v. Mintz (1987),33 Ohio St.3d 121, 123, 515 N.E.2d 917; Yahraus v. City of Circleville, Pickaway App. No. 00CA04, 2000-Ohio-2019.
 {¶ 15} Here, Mr. Thebeau sought the dismissal of Ms. Thebeau's complaint. However, the trial court's entry did not order that or any other form of relief. Instead, that entry merely announced the court's decision that it did not have jurisdiction over the matter. Until the court ordered the complaint dismissed, the entry was not a final appealable order. Because the decision was not a final appealable order, it was subject to reconsideration on Ms. Thebeau's motion.Pitts, 67 Ohio St.2d at 379 n. 1; Mahlerwein at ¶ 20. Accordingly, we overrule Mr. Thebeau's first assignment of error.
 IV. Jurisdiction over the Child-Custody Dispute {¶ 16} In his second assignment of error, Mr. Thebeau argues that the trial court lacked jurisdiction to modify the Hawaii custody order. "The jurisdiction of a court is that power conferred upon it by law, by which the court is authorized to hear, determine and render final judgment in an action, and to enforce its judgment by legal process." State ex rel.ACCSEA v. Balch, Athens App. No 06CA26, 2007-Ohio-7168, at ¶ 22, citing *Page 9 Borkosky v. Mihailoff (1999), 132 Ohio App.3d 508, 511, 725 N.E.2d 694. The existence of the trial court's subject matter jurisdiction is a question of law that we review de novo. Id., citing Yazdani-Isfehani v.Yazdani-Isfehani, Athens App. No. 06CA6, 2006-Ohio-7105, at ¶ 20. "Inasmuch as the trial court may have needed to make factual determinations to rule on its subject matter jurisdiction, a reviewing court will defer to those findings if they are supported by competent and credible evidence." In re Campbell, Mahoning App. No. 05MA10,2006-Ohio-1764, at ¶ 7, citing State ex rel. Fleming v. Rocky River Bd.of Ed. (1997), 79 Ohio St.3d 200, 205, 680 N.E.2d 981; see also City ofGahanna v. Cameron, Franklin App. No. 02AP-255, 2002-Ohio-6959, at ¶ 43 (holding that, in reviewing denial of motion to dismiss for lack of jurisdiction, "an appellate court will defer to a trial court's factual findings, but must independently determine, as a matter of law, whether the trial court erred in applying the substantive law to the facts of the case.").
 {¶ 17} The purpose of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") is to avoid jurisdictional conflict and to promote cooperation between state courts in custody matters so that a decree is rendered in the state that can best decide the best interest of the child. In re Collins, Guernsey App. No. 06CA000028,2007-Ohio-4582, at ¶ 16. Under the UCCJEA, the court in which a custody decree is originally issued retains continuing jurisdiction over issues of custody arising from that decree. Rosen v. Celebrezze,117 Ohio St.3d 241, 2008-Ohio-853, 883 N.E.2d 420, at ¶ 21 ("The most significant change the UCCJEA makes to the UCCJA is giving jurisdictional priority and exclusive continuing jurisdiction to the home state.'" (quoting Annotation, Construction and Operation of Uniform Child Custody Jurisdiction and *Page 10 
Enforcement Act (2002), 100 A.L.R. 5th 1, 20, Section 2[b].)). However, Ohio courts have jurisdiction to modify an out-of-state custody order in certain circumstances. R.C. 3127.17 allows an Ohio court to modify a child custody determination made by a court of another state where the Ohio court would have jurisdiction to make an "initial custody determination" under R.C. 3127.15(A)(1) or (2) and one of the following applies: (1) the court of the state that issued the custody decree determines that it no longer has exclusive, continuing jurisdiction or decides that an Ohio court would be a more convenient forum under R.C. 3127.21, or (2) the Ohio court or the court that issued the custody decree determines that the child and the child's parents do not presently reside in the original state. Because the trial court determined, and Mr. Thebeau concedes, that the children and the children's parents no longer reside in Hawaii, we must determine whether the trial court had jurisdiction to make an initial custody determination under R.C. 3127.15(A)(1) or (2).
 {¶ 18} R.C. 3127.15(A)(1) provides that an Ohio court has jurisdiction to make an initial determination in a child custody proceeding if Ohio is the "home state" of the child at the commencement of the proceeding or if Ohio was the "home state" of the child six-months before the commencement of the proceeding, the child is absent from the state, and a parent or guardian still lives in Ohio. R.C. 3127.01(B)(7) defines "home state," in part, as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding." It is clear that the children in this case have never lived in Ohio for six consecutive months and that Ohio is not the "home state" under R.C. 3127.15(A)(1). *Page 11 
 {¶ 19} Instead, the parties focus on R.C. 3127.15(A)(2), which gives jurisdiction to Ohio courts to make an initial custody determination where no other state is the "home state" or a court of the child's "home state" has declined to exercise jurisdiction over the dispute because it has determined that Ohio is a more convenient forum. Again, the parties do not contend that a court of another state is the "home state" of the children. Although Hawaii was the "home state" of the children within six months prior to the commencement of this action, neither parent continues to live there, as is required by R.C. 3127.15(A)(1). Illinois is not the "home state" because the children had not lived there for a period of six consecutive months immediately preceding the commencement of this action. R.C. 3127.01(B)(7). However, in order for an Ohio court to have jurisdiction over this action under R.C. 3127.15(A)(2) because no other state is the "home state," both of the following criteria must also exist:
 (a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.
 (b) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.
The trial court concluded that both of these criteria were satisfied.
 {¶ 20} First, the trial court concluded both parents and the children have a significant connection to the State of Ohio other than mere physical presence. Ms. Thebeau has resided and worked in Ohio for over a year. Both Mr. and Ms. Thebeau were born and raised in Ohio, and both have a large number of family members in this state. The children's maternal grandfather, aunts, and uncles reside in Ohio, along with great-aunts, great-uncles, and other relatives. Furthermore, the children's paternal *Page 12 
grandfather lives in Ohio, as well as other relatives on Mr. Thebeau's side of the family.[1] The evidence supports the legal conclusion that the parties and the children have a significant connection with Ohio. See Justis v. Justis (1998), 81 Ohio St.3d 312, 316, 691 N.E.2d 264
("The children have a significant connection to Ohio since several relatives, including their father and their maternal and paternal grandparents, continue to reside here." (construing similar language in the predecessor statute to the UCCJEA)). Therefore, we agree that the first criterion is satisfied.
 {¶ 21} Second, the trial court concluded there was substantial evidence available in Ohio concerning the children's care, protection, training, and personal relationships. Mr. Thebeau argues that this evidence was insufficient to permit the court to take jurisdiction over this case. However, Ms. Thebeau lives in Ohio. The record shows that there is also evidence relating to the children's care arising from their visit with their mother for two weeks in December of 2005 and seven weeks during the summer of 2006. Ms. Thebeau's fiancé also resides in Ohio, as do various friends of Ms. Thebeau who have observed the care of the children. The record also shows that there is evidence of the children's personal relationships in Ohio, including their interactions with family members and other children in Ohio. This amounts to substantial evidence regarding the children's care, protection, training, and personal relationships in Ohio.
 {¶ 22} Mr. Thebeau relies heavily on the fact that much of the evidence regarding the children's care, protection, training, and personal relationships is not in Ohio. The children have never attended school in Ohio. Mr. Thebeau, the residential parent and the parent spending most of the time with the children, resides in Illinois, as do the children's stepmother and stepsiblings. The children reside in Illinois and have attended *Page 13 
school in Illinois subsequent to the filing of the complaint; thus, the children's teachers are in Illinois. Also, subsequent to the commencement of this action, Sarah has received counseling in Illinois, and evidence regarding that counseling is in Illinois. Although we accept the possibility that more of the evidence is located in Illinois, the key question in determining whether the trial court had jurisdiction in this case is whether there is substantial evidence regarding the children's care, protection, training, and personal relationship in Ohio. Thus, the question is not the location of the most evidence, but whether the evidence in Ohio represents substantial evidence. Mr. Thebeau did not argue that the trial court should decline jurisdiction of this case because Illinois is a more appropriate and convenient forum to hear this action under R.C. 3127.21, nor does he argue on appeal that the trial court erred in failing to decline jurisdiction on its own motion under R.C. 3127.21(A). Therefore, the fact that there may be a greater quantity of evidence in Illinois does not control our current inquiry.
 {¶ 23} We conclude the trial court had jurisdiction over this child-custody dispute; therefore, we overrule Mr. Thebeau's second assignment of error.
 V. Modification of the Hawaii Decree {¶ 24} In his third assignment of error, Mr. Thebeau argues that the trial court's decision to award Ms. Thebeau custody of the children is against the weight of the evidence. In particular, Mr. Thebeau argues that the trial court erred in concluding that there had been a significant change in circumstances and that the best interests of the children justified a change in custody.
 {¶ 25} Although Mr. Thebeau asserts that the trial court's decision is against the manifest weight of the evidence, we review the trial court's decision to grant a *Page 14 
modification of a prior allocation of parental rights and responsibilities with the utmost deference. McClead v. McClead, Washington App. No. 06CA67, 2007-Ohio-4624, at ¶ 19, citing Davis v.Flickinger (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159; Jones v.Jones, Highland App. No. 06CA25, 2007-Ohio-4255, at ¶ 32. Deferential review in a child custody case is crucial since there may be much evident in the parties' demeanor and attitude that does not translate to the record well. McClead at ¶ 19, citing Davis, 77 Ohio St. 3d at 418. Furthermore, we defer to the trial court's factual findings because the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use its observations in weighing the credibility of the proffered testimony. Id., citingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273. Therefore, we review the trial court's decision to modify the custody decree for the abuse of discretion. Id. This is a more deferential standard than the manifest weight of the evidence.Jones at ¶ 32. When applying an abuse of discretion standard, we are not free to merely substitute our judgment for that of the trial court. Id., citing In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-38,566 N.E.2d 1181. As we explained in Jones:
 [A]n abuse of discretion involves far more than a difference in opinion. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.
Id. According to the Supreme Court of Ohio, a trial court does not abuse its discretion in this context if its judgment is supported by "a substantial amount of credible and *Page 15 
competent evidence." Davis, 77 Ohio St.3d at 418, quoting Bechtol v.Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus.
 {¶ 26} The modification of parental rights and responsibilities is controlled by R.C. 3109.04(E). "R.C. 3109.04(E)(1)(a) creates a strong presumption in favor of retaining the residential parent." Alessio v.Alessio, Franklin App. No. 05AP-988, 2006-Ohio-2447, at ¶ 11. Therefore, a court shall not modify a parenting decree allocating parental rights unless it finds that, based on facts that have arisen since the decree, there has been a change in circumstances in the life of the child or the parents and modification of the decree is necessary to serve the child's best interest. R.C. 3109.04(E)(1)(a). Additionally, the court must find that one of the factors listed in R.C. 3109.04(E)(1)(a)(i), (ii), or (iii) applies. In this case, the trial court found that R.C. 3109.04(E)(a)(iii) applied: "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 27} Thus, we must determine whether the evidence supports the trial court's finding "(1) that a change in circumstances has occurred since the last decree, (2) that modification is necessary to serve the best interest of the child, and (3) that the advantages of modification outweigh the potential harm." Jones at ¶ 20. "If no change in circumstances occurred, the requirements for a change of custody cannot be satisfied, and a reviewing court need not examine the court's determination of the child's best interests." Cowan v. Cowan, Washington App. No. 04CA5, 2004-Ohio-6119, at ¶ 16. *Page 16 
 {¶ 28} The trial court and the magistrate determined that Mr. Thebeau and the children's relocation from Hawaii to Illinois was an appropriate change in circumstances to warrant modification of the custody order. We disagree.
 {¶ 29} As the Supreme Court of Ohio has explained,
 "[t]he clear intent of [R.C. 3109.04] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a `better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment."
Davis, 77 Ohio St.3d at 418, quoting Wyss v. Wyss (1982),3 Ohio App.3d 412, 416, 445 N.E.2d 1153. Thus, a change in circumstances is a threshold requirement intended to provide some stability to the custodial status of the child. In re Braydon James, 113 Ohio St.3d 420,2007-Ohio-2335, 866 N.E .2d 467, at ¶ 15; Davis, 77 Ohio St.3d at 417, citing Wyss, 3 Ohio App.3d at 416. Because of this need for stability in the child's life, any change in circumstances must be substantive and significant. See Jones at ¶ 21 ("But, a trial court is limited to the extent that a change in circumstances cannot be based on a slight or inconsequential change; it must be one of substance."); Bragg v.Hatfield, 152 Ohio App.3d 174, 2003-Ohio-1441, 787 N.E.2d 44, at ¶ 23 ("The change [of circumstances] must be significant — something more than a slight or inconsequential change."). Ohio courts have generally interpreted the phrase change of circumstances to mean "`an event, occurrence, or situation which has a material and adverse effect upon a child.'" In re DM., Cuyahoga App. No. 87723, 2006-Ohio-6191, at ¶ 35, quoting Rohrbaugh v. Rohrbaugh (2000), 136 Ohio App.3d 599, 604-05,737 N.E.2d 551; Lindman v. Geissler, 171 Ohio App.3d 650, 2007-Ohio-2003,872 N.E.2d 356 (quoting *Page 17 Rohrbaugh); Pedraza v. Collier, Henry App. No. 7-06-03, 2007-Ohio-3835, at ¶ 18 (same).
 {¶ 30} The record does not support the conclusion that the relocation to Illinois had a material and adverse effect upon the children. Ohio courts have held that the relocation of the parent with custody over the children — the "residential parent" — is insufficient, in and of itself, to constitute a change of circumstances justifying the modification of a custody decree. See, e.g., Jones at ¶ 38 ("In some instances, a residential parent's relocation, by itself may not produce a sufficient change in circumstances."); In re DM. at ¶ 36 ("The act of moving a child to a different state and then resettling with a new stepparent does not, by itself, constitute a sufficient change of circumstances to warrant a change of custody."); Salisbury v. Salisbury, Portage App. Nos. 2005-P-0010 and 2005-P-0084, 2006-Ohio-3543, at ¶ 92 ("It is well-settled that a relocation of a residential parent to another state does not, in and of itself, qualify as a change in circumstances.");Rohrbaugh, 136 Ohio App.3d at 604 (noting that that "relocation is not, standing alone, sufficient to determine that a change in circumstances has occurred."). There is no evidence in the record showing that relocation of the children from Hawaii to Illinois itself caused any adverse effects on the children's well-being or their relationship to their natural mother. In fact, the evidence in the record shows the opposite: relocation to Illinois has brought the children closer to their mother and has allowed enhanced visitation with her.
 {¶ 31} Although the Magistrate concluded that the children were "somewhat fearful" of their stepmother, the record does not support this conclusion. The basis for this conclusion appears to be the report of the guardian ad-litem, who did not testify. *Page 18 
The guardian ad-litem's report is not substantive evidence and should not be used for that purpose. See In re Hilyard, Vinton App. Nos. 05CA630 — 05CA639, 2006-Ohio-1997, at ¶ 53 et seq. The purpose of the guardian ad-litem's report is to allow the court to decide whether the guardian ad-litem has fulfilled his/her statutory duties; it should be used as substantive evidence. Id at ¶ 57. To the extent the Magistrate relied upon the report to draw its conclusions, it erred. Moreover, we find the Magistrate's conclusion difficult to reconcile with the his finding that the children desired to live with Mr. Thebeau as much as they desired to live with Ms. Thebeau. Thus, the trial court could not reasonably rely on the Magistrate's vague conclusion that the children "seem[ed] somewhat fearful" of their stepmother as constituting a change of circumstances.
 {¶ 32} Accordingly, substantial credible and competent evidence does not support the trial court's finding that there has been a change of circumstances having a material and adverse effect on the child.
 {¶ 33} Nor do we believe that modification was necessary to serve the best interests of the child. Here, the magistrate concluded that Ms. Thebeau was more likely to facilitate visitation than Mr. Thebeau. However, Mr. Thebeau conceded at trial that a change in the visitation schedule giving Ms. Thebeau more time with the children was warranted. Given that the trial court could have modified the visitation schedule, it was not necessary for the court to order a change of custody to allow Ms. Thebeau greater visitation. Mr Thebeau always complied with the visitation order, and we do not believe that Mr. Thebeau's decision not to expand Ms. Thebeau's visitation as provided by the court's order in and of itself represents a justification for modifying the custody order. See Travis v. Travis, Clark App. No. 2006 CA 39, 2007-Ohio-4077, at ¶ 33 (holding that *Page 19 
the residential parent's decision to reduce the non-residential's parent's visitation to the time provided in the custody decree did not in itself justify a modification of the custody decree). Although we encourage parents to cooperate on visitation, the purpose of a visitation order is to settle these issues and to provide structure and stability. The record does not show that Mr. Thebeau has withheld extra visitation with the purpose to harm Ms. Thebeau's relationship with the children; in fact, the record shows that Mr. Thebeau chose a duty station in Illinois to allow enhanced visitation with Ms. Thebeau.
 {¶ 34} The trial court could not reasonably conclude on the record before us that there has been a material change in circumstances adversely affecting the welfare of the children or that modifying the allocation of parental rights and responsibilities was necessary in order to serve the best interests of the children. Accordingly, we conclude that the trial court abused its discretion in modifying the child custody decree to make Ms. Thebeau the residential parent of the children. We therefore sustain Mr. Thebeau's third assignment of error. Our decision regarding the third assignment of error renders the fourth assignment of error moot.
 {¶ 35} For this reason, we reverse the judgment below and remand the case to the trial court for further proceedings consistent with this opinion.
 JUDGMENT REVERSED AND CAUSE REMANDED. *Page 20 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED. Appellee shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J., Harsha, J., McFarland, J.: Concur in Judgment and Opinion.
Peter B. Abele, Presiding Judge, William H. Harsha, Judge, Matthew W. McFarland, Judge.
[1] The children's maternal grandmother is deceased. The paternal grandmother lives in Florida. *Page 1