DECISION AND JUDGMENT ENTRY
{¶ 1} Jason M. McClead appeals the trial court's decision granting Stacey J. McClead's motion to require supervised visitation, denying his motion to modify the parties' prior allocation of parental rights and responsibilities, and denying his motion to find Stacey in contempt for violating the visitation order. He first contends that the trial court erred by modifying visitation and ordering that his visits with the child be supervised until she reached the age of five. Because the child has reached the age of five, the trial court's decision granting the motion to modify visitation to supervised visits has expired. Therefore, this assignment of error is moot.
 {¶ 2} Jason next asserts that the trial court erred by failing to address and/or by denying his motion to modify the parties' prior allocation of parental rights and responsibilities. Because Jason failed to file a request for findings of *Page 2 
fact and conclusions of law under Civ.R. 52, he has waived the right to challenge the court's failure to render any specific factual findings or legal conclusions. And, his argument that the court failed to even consider his motion is meritless. The court noted at the beginning of the hearing that Jason's motion was before it, and the court stated in its entry that it confirmed all of its prior orders, thus implicitly rejecting Jason's motion. In reviewing the merits of his argument, we must presume the regularity of the court's decision. The trial court reasonably could have determined that Jason failed to meet the threshold requirement of showing that a change in circumstances occurred sufficient to warrant a modification. Thus, the court did not abuse its discretion by denying his motion to modify the prior allocation of parental rights and responsibilities.
 {¶ 3} Jason also argues that the trial court erred by denying his motion to find Stacey in contempt for violating the parties' visitation order. The trial court found Stacey's concern for her child's well-being prompted her decision to deny him visitation. Under these circumstances, the trial court declined to find Stacey in contempt. Because that decision has a basis in fact and reason, it was not an abuse of discretion.
 {¶ 4} Accordingly, we overrule Jason's three assignments of error and affirm the trial court's judgment.
 I. FACTS {¶ 5} The parties married and had one child who was born in April of 2002. By the spring of 2003, the parties had divorced and agreed to a shared *Page 3 
parenting plan that designated Stacey the residential parent and granted Jason visitation.
 {¶ 6} According to Stacey, after the child spent the 2005 Easter weekend in her father's care, Stacey took the child to the emergency room after observing that she was extremely dehydrated and had a rash on her bottom. The doctor diagnosed the child with "diaper rash and febrile illness." Shortly thereafter, Stacey claims the child became aggressive after visiting with her father and began to have frequent nightmares. Later, Stacey noticed that the child began touching herself in her private areas and engaging in other sexual behaviors. The child played with her dolls in a provocative manner and made sexual gestures toward her step-grandfather. Stacey feared that the child was enduring some form of sexual abuse while in Jason's care. Children services investigated but did not substantiate Stacey's allegations.
 {¶ 7} In February of 2006, Stacey filed a motion to modify visitation, requesting that the court suspend Jason's visits or, alternatively, order supervised visits between the child and Jason due to her concerns about potential sexual abuse occurring in Jason's home. Around that same time, she denied Jason visits with the child because she was concerned about the child's safety.
 {¶ 8} Jason filed a motion to show cause why Stacey should not be held in contempt for failing to abide by the parties' agreed shared parenting plan. He asserted that Stacey denied him visitation the weekend of February 10, 2006. *Page 4 
Jason subsequently filed a motion to modify the shared parenting plan and requested the court to designate him the residential parent.
 {¶ 9} The court ordered that Jason's visits with the child be supervised until the child reaches the age of five. The court found that the child "has, in all probability, undergone some trauma. Where and when this would have occurred, and who the perpetrator was, however, are far from clear." The court denied Jason's contempt motion, explaining, "In light of the nature of [Stacey's] concern, her efforts to obtain legal guidance for interrupting visitation, and of the limited period of failure to follow the Court's prior visitation order, the Court does not find her in contempt." While the court did not set forth any specific findings regarding Jason's motion to modify the prior allocation of parental rights and responsibilities, the court stated, "In all other respects, the prior orders of the Court are confirmed."
 II. ASSIGNMENTS OF ERROR {¶ 10} Jason assigns the following errors:
 First Assignment of Error:
 "The trial court abused its discretion in granting the mother's motion to modify visitation and ordering supervised visitation. The trial court's decision is against the manifest weight of the evidence."
 Second Assignment of Error:
 "The trial court abused its discretion in denying the father's motion to modify the shared parenting plan and designate him as primary residential parent for school purposes in light of the totality of the evidence presented."
 Third Assignment of Error:
 "The trial court erred in denying the father's motion to show cause." *Page 5 
 III. MOTION TO MODIFY VISITATION {¶ 11} In his first assignment of error, Jason argues that the trial court erred by granting Stacey's motion to modify visitation and ordering that his visits with the child be supervised until the child reaches the age of five.
 {¶ 12} Before we can address the merits of this assignment of error, we first must determine whether the issue it presents involves a case or controversy or, instead, an abstract question not currently capable of judicial review. See, e.g., Babbitt v. United Farm Workers Nat.Union (1979), 442 U.S. 289, 297, 99 S.Ct. 2301, 60 L.Ed.2d 895;Muskrat v. United States (1911), 219 U.S. 346, 356, 31 S.Ct. 250, 55 L.Ed. 246. "[C]ourts decide only cases or controversies between litigants whose interests are adverse to each other, and do not issue advisory opinions." State ex rel. Ohio Academy of Trial Lawyers v.Sheward (1999), 86 Ohio St.3d 451, 524-525, 715 N.E.2d 1062 (Moyer, J., dissenting).
 {¶ 13} A case or controversy is lacking and the case is moot "`when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Los Angeles v. Davis (1979),440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (quoting Powell v.McCormack (1969), 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491); see, also, Erie v. Pap's A.M. (2000), 529 U.S. 277, 287, 120 S.Ct. 1382,146 L.Ed.2d 265. "No actual controversy exists where a case has been rendered moot by an outside event. `It is not the duty of the court to answer moot questions, and when, pending proceedings in error in this court, an event occurs without the fault of either party, which renders it impossible for the court to grant any relief, it will dismiss the petition in error.' *Page 6 Miner v. Witt (1910), 82 Ohio St. 237, 92 N.E. 21, syllabus."Tschantz, 57 Ohio St.3d at 133. "A cause will become moot only when it becomes impossible for a tribunal to grant meaningful relief, even if it were to rule in favor of the party seeking relief." Joys v. Univ. ofToledo (April 29, 1997), Franklin App. No. 96APE08-1040, citingMiner, 82 Ohio St. at 238-239.
 {¶ 14} Here, even if we were to agree with Jason that the trial court erred by granting Stacey's motion to modify visitation and ordering supervised visitation, we could not grant Jason any relief. The court's order imposing supervised visitation expired when the child turned five years of age. This happened in April of 2007. Thus, the court's decision modifying visitation, which ordered supervised visitation, has expired. Several courts have recognized that the expiration of a challenged order renders an appeal of that order moot. See Bambeck v. Catholic Diocesesof Cleveland, Cuyahoga App. No. 86894, 2006-Ohio-4883 (stating that argument challenging temporary restraining order was moot because the order had expired); VanMeter v. VanMeter, Franklin App. No. 03AP-1107,2004-Ohio-3390 (stating that appeal was moot when the civil protection order had expired); Weinfeld v. Welling (Apr. 9, 2001), Stark App. No. 2000CA252 (stating that when an injunction has already expired, arguments regarding whether the injunction was appropriate are moot);Saffold v. Saffold (May 13, 1999), Cuyahoga App. No. 72937 (appeal moot when protective order had expired); In re Lewis Children (Aug. 5, 1996), Stark App. No. 1995CA339 (appeal moot when order extending temporary custody had expired). But, see, Cauwenbergh v. Cauwenbergh, Ashtabula App. No. 2006-A-8, 2007-Ohio-1070 *Page 7 
(finding appeal challenging civil protection order was not moot when its duration was only four months, which was "too short a time for it to be reviewed by [the] court" and when the docket showed that the complaining party had filed for an extension of the order).
 {¶ 15} There are exceptions to the mootness doctrine, such as when issues are "capable of repetition, yet evading review." See State exrel. Beacon Journal Publishing Co. v. Donaldson (1992), 63 Ohio St .3d 173, 175, 586 N.E.2d 101. "[T]his exception applies only in exceptional circumstances in which the following two factors are both present: (1) the challenged action is too short in its duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." State ex rel. Calvary v. Upper Arlington (2000),89 Ohio St.3d 229, 231, 729 N.E.2d 1182; see, also, State ex rel. White v.Kilbane Koch, 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508. The Supreme Court of Ohio has recognized two other exceptions to the mootness doctrine: (1) when the issue involves "a matter of great public interest," or (2) when "there remains a debatable constitutional question to resolve." Franchise Developers, Inc. v. Cincinnati (1987),30 Ohio St.3d 28, 505 N.E.2d 966, paragraph one of the syllabus; see, also, State ex rel. White.
 {¶ 16} However, none of the exceptions to the mootness doctrine apply in this case. The issue is not one of those "exceptional circumstances" that is "capable of repetition, yet evading review." See State ex rel.Calvary, supra. Even if the court's order was of such short duration that it could not be appealed *Page 8 
before its expiration (the court ordered supervised visitation in October of 2006, and the child turned five in April of 2007), the record does not document a reasonable expectation that Jason will be subjected to the same order again. While he asserts that Stacey filed another motion to modify visitation, that motion is not in the record before this court. Thus, we can only speculate as to the basis for the motion whether the trial court will grant it. If, and when, the court grants this latest motion, Jason may appeal it.
 {¶ 17} Because the trial court's decision granting Stacey's motion to modify visitation and ordering supervised visitation has expired, Jason's first assignment of argument relating to this decision is moot. Accordingly, we overrule it.
 IV. MOTION TO MODIFY PRIOR ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES {¶ 18} In his second assignment of error, Jason contends that the trial court erred by failing to address and/or by denying his motion to modify the parties' prior allocation of parental rights and responsibilities.
 A. Standard of Review {¶ 19} We review a trial court's decision to grant a modification of a prior allocation of parental rights and responsibilities with the utmost deference. Davis v. Flickinger (1995), 77 Ohio St.3d 415, 418,674 N.E.2d 1159; Miller v. Miller (1988), 37 Ohio St.3d 71, 74,523 N.E.2d 846. Consequently, we can only sustain a challenge to a trial court's decision to modify parental rights and responsibilities upon a finding that the trial court abused its discretion. Davis, supra. When applying this standard, we are not free to merely substitute our *Page 9 
judgment for that of the trial court. In re Jane Doe 1 (1991),57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181. Deferential review in a child custody case is crucial since there may be much evident in the parties' demeanor and attitude that does not translate to the record well.Davis, 77 Ohio St.3d at 419. Moreover, we presume that the trial court's findings are correct, since the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use its observations in weighing the credibility of the proffered testimony. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 B. Standard for Modifying a Prior Decree Allocating Parental Rights and Responsibilities {¶ 20} R.C. 3109.04(E)(1)(a) governs the modification of a prior allocation of parental rights and states:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 * * * *
 The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
Thus, a trial court may modify an allocation of parental rights and responsibilities only if the court finds (1) that a change in circumstances has occurred since the last decree, (2) that modification is necessary to serve the best interest of the *Page 10 
child, and (3) that the advantages of modification outweigh the potential harm. See, e.g., Beaver v. Beaver (2001), 143 Ohio App.3d 1,9, 757 N.E.2d 41.
 {¶ 21} A change in circumstances is a threshold requirement intended to provide some stability to the custodial status of the child. In reJames, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, at ¶ 15;Davis, 77 Ohio St.3d at 417, citing Wyss v. Wyss (1982),3 Ohio App.3d 412, 416, 445 N.E.2d 1153. However, appellate courts "must not make the threshold for change so high as to prevent a trial judge from modifying custody if the court finds it necessary for the best interest of the child." Davis, 77 Ohio St.3d at 420-421. While we are required to afford a trial court's decision regarding a change of circumstances the utmost discretion, a trial court is limited to the extent that a change in circumstances cannot be based on a slight or inconsequential change; it must be one of substance. Id. at 418.
 {¶ 22} Courts must remain mindful that "`[t]he clear intent of [R.C.3109.04] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a "better" environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.'" Id., quoting Wyss, 3 Ohio App.3d at 416.
 {¶ 23} Not only must the change of circumstances be of consequence, but it also must relate to the child's welfare. Beaver143 Ohio App.3d at 10. "`Implicit in the definition of changed circumstances is that the change must relate *Page 11 
to the welfare of the child.'" Id., quoting Holtzclaw v. Holtzclaw (Dec. 14, 1992), Clermont App. No. CA92-04-036.
 C. Failure to Request Findings of Fact and Conclusions of Law {¶ 24} In this case, Jason failed to request findings of fact and conclusions of law. Civ.R. 52[1] provides that "judgment may be general for the prevailing party unless one of the parties in writing requests otherwise." The failure to request findings of fact and conclusions of law results in a waiver of the right to challenge the trial court's lack of an explicit finding concerning an issue. SeePawlus v. Bartrug (1996), 109 Ohio App.3d 796, 801, 673 N.E.2d 188;Wangugi v. Wangugi (Apr. 12, 2000), Ross App. No. 2531; Ruby v.Ruby (Aug. 11, 1999), Coshocton App. No. 99CA4. "[W]hen a party does not request that the trial court make findings of fact and conclusions of law under Civ.R. 52, the reviewing court will presume that the trial court considered all the factors and all other relevant facts."Fallang v. Fallang (1996), 109 Ohio App.3d 543, 549, 672 N.E.2d 730; see, also, In re Barnhart, Athens App. No. 02CA20, 2002-Ohio-6023.
 {¶ 25} In the absence of findings of fact and conclusions of law, we must presume the trial court applied the law correctly and must affirm if there is some evidence in the record to support its judgment. See, e.g., Bugg v. Fancher, Highland App. No. 06CA12, 2007-Ohio-2019, at ¶ 10, citing Allstate Financial Corp. v. Westfield Serv. Mgt. Co.
(1989), 62 Ohio App.3d 657, *Page 12 577 N.E.2d 383. As the court explained in Pettit v. Pettit (1988),55 Ohio App.3d 128, 130, 562 N.E.2d 929:
 "[W]hen separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with [its] judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence.
 The message is clear: If a party wishes to challenge the * * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already `uphill' burden of demonstrating error becomes an almost insurmountable `mountain.'"
See, also, Bugg; International Converter, Inc. v. Ohio ValleyConverting, Ltd. (May 26, 1995), Washington App. No. 93CA34.
 {¶ 26} Applying the presumption of regularity, it appears the trial court could have concluded that Jason failed to meet the threshold requirement of showing a change in circumstances sufficient to warrant a modification. Jason testified that the following circumstances warranted a modification:
 "I think that, with all these allegations and slander against me, it's just — it's totally wrong. I have been so stable with my life. I got married to my wife. We have almost lived in this home for a year. I've had this job for almost two years, and [Stacey] has been on four jobs I know of, in the past year. And I — I'm just tired of this. I'm tired of being accused of being such a bad person, when all I do, is try and raise my kids to the best of my ability. I raise my son, I take care of him, I wash and bath[e] him. I just want to be a father. That's all I ask, is to be a father, to not be accused of something I'm not even capable of doing, nor * * * would I ever do such a thing, ever in my life. I love kids. I love them."
The trial court reasonably could have determined these factors did not demonstrate a change in circumstances. Due to Jason's failure to request *Page 13 
findings of fact and conclusions of law, we can only speculate as to the court's reasoning. In any event, our review of the record reveals that the trial court did not abuse its discretion by denying Jason's motion to modify the prior allocation of parental rights and responsibilities.
 {¶ 27} Additionally, Jason's assertion that the trial court failed even to address his motion to modify the prior allocation of parental rights and responsibilities is meritless. At the beginning of the hearing, the court noted that this motion was part of the hearing. Jason testified regarding his reasons supporting the motion. Although the court's judgment entry does not specifically address the motion, the court did state that its "prior orders" were confirmed. If Jason desired more detailed findings, he could have requested findings of fact and conclusions of law under Civ.R. 52. This he failed to do, and he cannot now complain that the court erred in this regard.
 {¶ 28} Accordingly, we overrule Jason's second assignment of error.
 V. CONTEMPT MOTION {¶ 29} In his third assignment of error, Jason asserts that the trial court erred by denying his motion for contempt.
 {¶ 30} We review a trial court's decision regarding a civil contempt motion for an abuse of discretion. State ex rel. Celebrezze v.Gibbs (1991), 60 Ohio St.3d 69, 75, 573 N.E.2d 62; See also,McCleese v. Clemmons, Scioto App. No. 5CA3016, 2006-Ohio-3011. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, *Page 14 
450 N.E.2d 1140. Indeed, to establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, and not the exercise of reason but, instead, passion or bias. Nakoff v. Fairview Gen.Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1; see, also,Bragg v. Hatfield, Vinton App. No. 02CA567, 2003-Ohio-1441, ¶ 22.
 {¶ 31} As we already noted, we are not free to substitute our judgment for that of the trial court. In re Jane Doe I, supra. Instead, we give deference to the trial court as the trier of fact because it is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co., supra.
 {¶ 32} Contempt is a disregard of, or disobedience to, the orders or commands of judicial authority. Cassidy v. Cassidy, Pike App. No. 03CA721, 2005-Ohio-3199, at ¶ 20, citing First Bank of Marietta v.Mascrete, Inc. (1998), 125 Ohio App.3d 257, 263, 708 N.E.2d 262. A person may be punished for contempt for disobeying or resisting a lawful order, judgment, or command of the court. R.C. 2705.02; see, e.g.,Carver v. Halley, Greene App. No. 06CA54, 2007-Ohio-2351, at ¶ 9. "The authority and proper functioning of the court are the primary interests involved in a contempt proceeding and, therefore, great reliance should be placed on the discretion of the trial court judge. See Denovchek v.Bd. of Trumbull Cty. Commrs. (1988), 36 Ohio St.3d 14, 16,520 N.E.2d 1362. To that end, numerous appellate districts have held that trial courts may decline to *Page 15 
hold a party in contempt notwithstanding abundant and uncontroverted evidence of a technical violation of a court order. We have adopted the same position. See, e.g., In re Skinner (Mar. 23, 1994), Adams App. No. 93CA547; Shafer v. Shafer (Nov. 31, 1993), Washington App. No. 93CA16."Wolfe v. Wolfe (July 30, 1998), Scioto App. No. 97CA2526 (citations omitted); see, also, In re Lane, Washington App. No. 03CA35,2004-Ohio-412.
 {¶ 33} Some Ohio appellate courts, including this one, have recognized what essentially amounts to a defense for violating a visitation order when a parent has a good faith belief that she or he is acting to protect the safety of the child. In Shafer, we determined that the trial court did not abuse its discretion by declining to find a mother in contempt for disobeying a visitation order when the mother "genuinely perceived a threat to her children and acted in disobedience of the visitation order so as to protect them." Likewise, in Buchanan v.Buchanan (Aug. 16, 1999), Clermont App. No. CA98-10-085, the court affirmed the trial court's refusal to find a father in contempt when the father denied the mother visitation due to his concerns about physical abuse. The trial court concluded that the father acted reasonably under the circumstances and, based upon this finding, the appellate found no abuse of discretion. Similarly, in Boley v. Boley (Sept. 19, 1994), Holmes App. No. CA 498, the court affirmed a trial court's decision declining to find a father in contempt when the father had a good faith belief that the children's safety was at risk if returned to their mother. The court stated: "This Court will not substitute our judgment for that of the trial court and will not impose punishment for the violation of a court order when the court that *Page 16 
made the original order finds a legitimate excuse." See, also,Clark v. Clark (Apr. 19, 1993), Preble App. No. CA92-01-001 (concluding that trial court did not abuse its discretion by declining to find mother in contempt for violating visitation order when mother explained she denied father visitation due to concerns about sexual abuse);Bardenhagen v. Bardenhagen (Aug. 27, 1990), Clermont App. No. CA90-01-009 (determining that trial court did not abuse its discretion by refusing to find mother in contempt for failing to allow father visitation when mother suspected father committed sexual or physical abuse).
 {¶ 34} While we sympathize with Jason's predicament and may have decided the issue differently, we cannot say the trial court abused its discretion by not finding Stacey in contempt. The trial court essentially determined that Stacey had justifiable reasons for disobeying the visitation order. It concluded Stacey believed that the child was being subjected to some type of sexual abuse and violated the order to protect the child. While the better course of action would have been for her to seek judicial relief, under these circumstances, the trial court's decision declining to hold Stacey in contempt is not an abuse of discretion.
 {¶ 35} Accordingly, we overrule Jason's third assignment of error and affirm the court's judgment.
 JUDGMENT AFFIRMED. *Page 17 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J., Harsha, J. Abele, J.: Concur in Judgment and Opinion.
[1] "`Civ.R. 52, requiring separate findings of fact and conclusions of law upon timely request, applies to change of custody proceedings which involve questions of fact tried and determined by the court without a jury.'" State ex rel. Papp v. James (1994), 69 Ohio St.3d 373,377, quoting Werden v. Crawford (1982), 70 Ohio St.2d 122, syllabus. *Page 1