DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an Athens County Common Pleas Court judgment that modified a prior allocation of parental rights and responsibilities entered in a divorce action between Samuel L. Dingus, defendant below and appellant herein, and Amanda P. Crites, plaintiff below and appellee herein.
 {¶ 2} Appellant raises the following assignments of error for review:
 FIRST ASSIGNMENT OF ERROR: *Page 2 
 "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DESIGNATED MOTHER AS THE RESIDENTIAL AND CUSTODIAL PARENT."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ABUSED ITS DISCRETION BY MAKING THE FINDINGS OF FACT AS DESCRIBED BELOW WHEN IT DESIGNATED MOTHER AS THE RESIDENTIAL AND CUSTODIAL PARENT."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT DESIGNATED MOTHER AS THE RESIDENTIAL AND CUSTODIAL PARENT."
 FOURTH ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO CONSIDER ALL RELEVANT FACTORS WHEN DECIDING THAT A MODIFICATION OF THE PARTIES [SIC] DECREE ALLOCATING PARENTAL RIGHTS AND RESPONSIBILITIES WOULD BE IN THE BEST INTERESTS OF THE MINOR CHILD."
 {¶ 3} On April 7, 2003, the parties divorced. Appellee agreed to name appellant the legal custodian and residential parent of the parties' minor child, who has Fragile X Syndrome. At the time, appellant lived with his parents and appellee believed that they would help appellant care for their child.
 {¶ 4} In 2005, appellant moved in with his girlfriend and her two children. On January 23, 2007, appellee filed a motion to modify the prior allocation of parental rights and responsibilities. At the hearing before the magistrate, the guardian ad litem testified that both appellee and appellant obviously love the child and both are appropriate parents. He, however, had difficulty choosing whether modifying custody would serve the child's best interest. In the end, he stated that he found appellee's *Page 3 
home more suitable to raising a child with Fragile X Syndrom. The guardian ad litem explained that the "overall environment" of appellee's home would better serve the child's best interest and noted that by living with appellee, the child would spend more time with his brother, who also has Fragile X. He stated that appellee's home is "more than adequate," meaning that it is spacious, well-organized, neat, new, fresh, and had a lot of windows.
 {¶ 5} The guardian ad litem found that appellant residing in his girlfriend's house a negative factor because, in his opinion, non-marital relationships are not as strong and secure as marital relationships. The guardian ad litem stated that appellant's home is adequate, but not as new as appellee's home, that appellant and his girlfriend have a large dog that is too big for the home, and that appellant's and his girlfriend's work schedules tended to weigh against maintaining custody of the child with appellant. The guardian ad litem explained that appellant works a midnight shift in Columbus, which means that he leaves the house around 10:30 p.m. and returns around 9 a.m. His girlfriend's work schedule requires her to leave the house early in the morning, before the child goes to school. Thus, neither is home to see the child off to school, and they must use either a babysitter or the girlfriend's parents to prepare the child for school. In contrast, appellant is a stay-at-home mother. The guardian ad litem believed that in total, appellee could provide the most continuous care for the child.
 {¶ 6} On June 21, 2007, the magistrate recommended that the trial court designate appellee the residential parent. The magistrate found that a change in circumstances had occurred: the child no longer resides in the home with appellant and his paternal grandparents, but now resides in a home with appellee, his girlfriend, and *Page 4 
her two children. The magistrate further concluded that the change would serve the child's best interests. The child has an important relationship with only one sibling — the one with Fragile X who currently resides with appellee. The magistrate determined that the brothers share not only a close personal relationship, but also the same disability that requires similar care. The magistrate found that appellee has prior experience providing specialized care to Fragile X children, and she also has the support of her husband, who has special training with problem children.
 {¶ 7} The magistrate also determined that any harm resulting from the change did not outweigh the advantages: "Given [appellee's] and her current spouse's experience in handling problem children, and most particularly, children with Fragile X Syndrome, and the stability and arrangement of their living situation, the harm likely to be cause by a change in [the child's] environment is outweighed by the advantages of the change."
 {¶ 8} On July 2, 2007, appellant filed objections to the magistrate's decision. Appellant claimed that the magistrate failed to find or consider that: (1) appellee informally allowed him companionship time with Leland, the other Fragile X child; (2) appellant had as much experience with both Fragile X children as appellee; (3) the child's syndrome is more severe than Leland's; (4) the additional burden the child will place on appellee, considering her alleged limited abilities and memory problems and the foster children who come from troubled homes; (5) the unstable and chaotic nature of appellee's home due to the presence of foster children; (6) the child's inability to report important facts, such as whether he ingested medication; (7) appellee's lack of common sense and her failure to judge danger, as her decision to delay seeking *Page 5 
medical attention for the child after he ingested medication demonstrated; (8) appellee's alleged psychological problems; (9) appellant has a stable home; (10) appellant's work schedule allows him to be home with the child until 10:30 p.m., after the child already has gone to bed and outside help is needed only to prepare the child for school; (11) appellee's intrusive telephoning; (12) appellee's primary interest in obtaining custody is to give herself a second chance; (13) appellant has substantial experience in handling Fragile X children and appellee's husband has no experience in handling Fragile X children; (14) appellee's husband's absence from the home for emergency calls, thus leaving appellee with sole responsibility for the children; (15) appellee claimed that taking care of foster children would not take any time away from her own children; and (16) appellee believes appellant is a good father. Appellant also objected to the magistrate's apparent elevation of appellee's martial relationship over his five-year relationship with his girlfriend. He contended that the magistrate improperly concluded that a married relationship is more stable than an unmarried relationship. Appellant further asserted that the guardian ad litem had a religious bias against unmarried couples and, thus, that the magistrate should have rejected his recommendation.
 {¶ 9} Appellant also claimed that the magistrate wrongly found that appellee's home is a "picture of stability," in view of the foster children. Appellant further objected to the magistrate's finding that the child would benefit by living in the same home as his Fragile X brother. He claims that no evidence exists in the record to support such a conclusion. Appellant additionally contended that the magistrate's finding that the child does not have a relationship with his girlfriend's children is unsubstantiated.
 {¶ 10} The trial court overruled appellant's objections to the magistrate's decision *Page 6 
and adopted the magistrate's decision. This appeal followed.
 {¶ 11} In his four assignments of error, appellant asserts, in essence, that the trial court abused its discretion by granting appellee's motion to modify the prior allocation of parental rights.[1] In particular, he contends that the trial court failed to consider certain evidence when reaching its decision.
 A FAILURE TO REQUEST FINDINGS OF FACT AND CONCLUSIONS OF LAW {¶ 12} At the onset, we note that appellant's failure to request Civ. R. 52 findings of fact and conclusions of law complicates our review of his assignments of error. Civ. R. 52[2] provides that "judgment may be general for the prevailing party unless one of the parties in writing requests otherwise." Generally, the failure to request findings of fact and conclusions of law results in a waiver of the right to challenge the trial court's lack of an explicit finding concerning an issue. SeePawlus v. Bartrug (1996), *Page 7 
109 Ohio App .3d 796, 801, 673 N.E.2d 188; Wangugi v. Wangugi (Apr. 12, 2000), Ross App. No. 2531; Ruby v. Ruby (Aug. 11, 1999), Coshocton App. No. 99CA4. "[W]hen a party does not request that the trial court make findings of fact and conclusions of law under Civ. R. 52, the reviewing court will presume that the trial court considered all the factors and all other relevant facts." Fallang v. Fallang (1996),109 Ohio App.3d 543, 549, 672 N.E.2d 730; see, also, In re Barnhart, Athens App. No. 02CA20, 2002-Ohio-6023. In the absence of findings of fact and conclusions of law, we must presume the trial court applied the law correctly and must affirm if there is some evidence in the record to support its judgment. See, e.g., Bugg v. Fancher, Highland App. No. 06CA12, 2007-Ohio-2019, at ¶ 10, citing Allstate Financial Corp. v.Westfield Serv. Mgt. Co. (1989), 62 Ohio App.3d 657, 577 N.E.2d 383. As the court explained in Pettit v. Pettit (1988), 55 Ohio App.3d 128, 130,562 N.E.2d 929:
 "[W]hen separate facts are not requested by counsel and/or supplied by the court the challenger is not entitled to be elevated to a position superior to that he would have enjoyed had he made his request. Thus, if from an examination of the record as a whole in the trial court there is some evidence from which the court could have reached the ultimate conclusions of fact which are consistent with [its] judgment the appellate court is bound to affirm on the weight and sufficiency of the evidence.
 The message is clear: If a party wishes to challenge the * * * judgment as being against the manifest weight of the evidence he had best secure separate findings of fact and conclusions of law. Otherwise his already `uphill' burden of demonstrating error becomes an almost insurmountable `mountain.'"
See, also, Bugg; McClead v. McClead, Washington App. No. 06CA67,2007-Ohio-4624; International Converter, Inc. v. Ohio Valley Converting,Ltd. (May 26, 1995), Washington App. No. 93CA34.
 {¶ 13} Consequently, because we find no findings of fact and conclusions of law, *Page 8 
appellant's argument that the trial court failed to consider certain evidence is mere speculation. Additionally, as we explain below, we believe that the record contains evidence to support the trial court's decision.
 B STANDARD OF REVIEW {¶ 14} Appellate courts typically review trial court decisions regarding the modification of a prior allocation of parental rights and responsibilities with the utmost deference. Davis v. Flickinger (1995),77 Ohio St.3d 415, 418, 674 N.E.2d 1159; Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N.E.2d 846. Consequently, we may sustain a challenge to a trial court's decision to modify parental rights and responsibilities only upon a conclusion that the trial court abused its discretion. Davis, supra. In Davis, the court defined the abuse of discretion standard that applies in custody proceedings:
 "`Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (Trickey v. Trickey [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)' [Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus].
 The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. As we stated in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81, 10 OBR 408, 410-412, 461 N.E.2d 1273, 1276-1277:
 The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *
 * * *
 * * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion *Page 9 
on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal.'
 This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well."
Id. at 418-419.
 C
Standard for Modifying a Prior Allocation of Parental Rights and Responsibilities
 {¶ 15} R.C. 3109.04(E)(1)(a) governs the modification of a prior decree allocating parental rights:
 The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * * unless the modification is in the best interest of the child and one of the following applies:
 (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.
Thus, to modify a prior allocation of parental rights and responsibilities, three factors generally guide a trial court's decision: (1) whether a change in circumstances occurred, (2) whether modification is in the child's best interest, and (3) whether the benefits that result from the change outweigh any harm. See R.C. 3109.04(E)(1) (a); Clark v. Smith (1998), 130 Ohio App.3d 648, 653,720 N.E.2d 973.
 {¶ 16} In the case sub judice, appellant does not argue the change in circumstances factor. Thus, we do not address it. Instead, appellant's argument *Page 10 
focuses on whether the modification is in the child's best interest.
 {¶ 17} R.C. 3109.04(F)(1)(a)-(j) set forth the factors that a court must consider when determining a child's best interests:
 (F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding the child's care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 * * *
 {¶ 18} In the case sub judice, appellant challenges the trial court's decision because it failed to properly analyze the child's best interest and because, he claims, it did not consider all of the evidence. Appellant cites a litany of evidence that the court did not consider. Because we find no request for findings of fact and conclusions of law, however, we presume that the trial court properly considered all of the evidence and decided that appellant's evidence was less credible and did not impact its decision. For example, both appellant and appellee testified and related their respective beliefs that each would provide a better home for the child. Appellant attempted to portray *Page 11 
appellee as an absent-minded mother without the ability to properly care for the child, let alone the child plus foster care children. Both the magistrate and the trial court apparently rejected appellant's attempt to portray appellee as absent-minded and unable to properly parent the child and to properly care for the foster children. We presume the regularity of the trial court proceedings and that the court properly considered all relevant best interest factors.
 {¶ 19} We again emphasize the deference that we must accord trial court decisions involving the custody of children. Choosing between parents is not an easy task, especially when both are caring and loving parents, as are both appellant and appellee. Unfortunately, when parents separate courts must choose one parent and the decision may rest upon slight differences of opinion regarding the better overall environment for the child. Appellate courts are not well-suited to make such decisions based upon a review of a cold record. Instead, trial courts, where the evidence is heard and witnesses are evaluated, are more aptly suited to make this determination. Thus, in the instant case we decline to second-guess the trial court's decision based upon appellant's suggested interpretation of the evidence. Also, due to the lack of findings of fact and conclusions of law we do not know exactly how the trial court interpreted the evidence. Rather, because some evidence exists to support the trial court's decision, we presume that it is correct.
 {¶ 20} Furthermore, we observe that appellant contends that circumstances have again changed since the date of the final hearing. He asserts that appellee has filed for bankruptcy, that her home is in foreclosure, that she is living with her sister, and that she and her husband are debating terminating their marriage. However, none of this *Page 12 
evidence is in the record on appeal and we may not consider it. If circumstances have again changed, appellant may pursue another motion to modify custody and present evidence concerning the change in circumstances and the child's best interest.
 {¶ 21} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's assignments of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Abele, P.J., Harsha, J. Kline, J.: Concur in Judgment Opinion
[1] Initially, we note that appellant does not separately argue his assignments of error. Instead, he states rules of law under the first three assignments of error and then, under the fourth, he identifies the best interest factors that he claims the trial court failed to consider. App. R. 16(A)(7), however, requires a separate argument for each assignment of error. App. R. 12(A)(2) authorizes us to disregard any assignment of error that an appellant fails to separately argue. Thus, we would be within our authority to summarily overrule appellant's assignments of error and affirm the trial court's judgment. See, e.g.,Mortgage Electronic Registration Sys. v. Mullins, 161 Ohio App.3d 12,2005-Ohio-2303, 829 N.E.2d 326, at ¶ 22. In the interests of justice, however, we will review the assignments of error.
[2] "`Civ. R. 52, requiring separate findings of fact and conclusions of law upon timely request, applies to change of custody proceedings which involve questions of fact tried and determined by the court without a jury.'" State ex rel. Papp v. James (1994), 69 Ohio St.3d 373,377, quoting Werden v. Crawford (1982), 70 Ohio St.2d 122, syllabus.
 *Page 1